UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KAREN CAMBRIDGE, and DESHAWN PAIGE, and
JOHN WILLIAMS, and WENDELL DANIELS,

                Plaintiffs,

    -against-

HOME CLEAN HOME INC., and NICOLE LEVINE,
individually, and RALPH PANIGUA, individually,

                Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**Docket No.:** 22-cv-2106

Jury Trial Demanded

    KAREN CAMBRIDGE, and DESHAWN PAIGE, and JOHN WILLIAMS, and WENDELL DANIELS, (collectively, where appropriate, as "Plaintiffs"), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for their Complaint against HOME CLEAN HOME INC. ("HCHI"), and NICOLE LEVINE, individually, and RALPH PANIGUA, individually, (collectively, where appropriate, as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

    1.    This is a civil action for damages and other redress based upon violations that Defendants committed of Plaintiffs' rights collectively guaranteed to them by: (i) the anti-race discrimination provisions of Section 1981 of Title 42 of the United States Code ("Section 1981"); (ii) the anti-race discrimination provisions of Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); (iii) the anti-gender discrimination provisions of the NYCHRL; (iv) the anti-retaliation provisions of Section 1981; (v) the anti-retaliation provisions of the NYCHRL; and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2.     Plaintiffs, all African American, worked for Defendants - - a New York corporation that operates a Brooklyn-based cleaning services company, its owner, and its executive supervisor - - as platform and subway car cleaners at the Crown Heights - Utica Avenue Station in Brooklyn ("the Station"), collectively from as early March 2020 to as recently as September 21, 2020.

3.     As described below, Defendants discriminated against all Plaintiffs, on the basis of their race, in violation of Section 1981 and the NYCHRL, by subjecting them to a hostile work environment that included, *inter alia*, one of their supervisors, who is Hispanic, in Plaintiffs' presence, referring to them as "niggers" while making comments such as "I'm going to get these niggers out of here."

4.     Making matters worse, when Plaintiffs Cambridge, Paige, and Williams complained about this race discrimination to their executive supervisor, Defendant Panigua, who is also Hispanic, Defendants retaliated, collectively in violation of Section 1981 and the NYCHRL, by ratcheting up the harassment and ultimately by terminating their employment.

5.     Additionally, Defendants discriminated against Plaintiff Daniels, who is male, on the basis of his gender, in violation of the NYCHRL, by subjecting him to hostile work environment sexual harassment through the actions of that same supervisor, which included, *inter alia*, unwanted sexual advances and touching. Even worse, after Daniels repeatedly rejected those advances and informed Defendant Panigua that he intended to file a complaint with the Equal Employment Opportunity Commission ("EEOC") if Defendants did not take action to stop it, Defendants retaliated, in further violation of the NYCHRL, by subjecting him to increased harassment, denying his requests and opportunities for extra work shifts, and ultimately by terminating his employment.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1981. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

8. At all relevant times herein, Plaintiffs, who are African American, worked for Defendants in Brooklyn, New York, and were "persons" and "employees" entitled to protection as defined by Section 1981 and the NYCHRL.

9. At all relevant times herein, Defendant HCHI was and is a New York corporation with its principal place of business located at 1323 East 15th Street, Brooklyn, New York 11230, which is authorized to receive service of process at that same address.

10. At all relevant times herein, Defendant Levine was and is the owner and Chief Executive Officer of HCHI, who personally manages and oversees the day-to-day operations of the business, and who is ultimately responsible for all matters with respect to the business and its employees.

11. At all relevant times herein, Defendant Panigua was and is an executive supervisor for HCHI, who exercised "supervisory authority" over Plaintiffs and Plaintiffs' immediate supervisors within the meaning of the NYCHRL.

12. At all relevant times herein, Defendants were and are "persons" within the meaning of Section 1981, and Defendant HCHI was and is an "employer" within the meaning of the NYCHRL, as it employed four and thus one or more employees.

## BACKGROUND FACTS

13. Defendant HCHI is a Brooklyn-based corporation that provides residential and commercial cleaning services throughout the New York City area. At all relevant times herein, HCHI contracted with the New York City Transit Authority to provide its services in maintaining and cleaning specific subway stations and the subway cars that passed through those stations, including at the Station.

14. Defendant Levine was and is the owner and Chief Executive Officer of HCHI, who manages the business on a day-to-day basis.

15. Defendant Panigua was and is an employee of HCHI who serves as an executive supervisor in the Brooklyn and Queens regions. As an executive supervisor, Panigua is responsible for making all significant personnel decisions related to HCHI's employees, including its supervisory staff, who work within his region, including at, among other places, the Station, including but not limited to Plaintiffs, in that he made the decision to hire and fire those employees, he handles employee complaints, and he was and is responsible for setting employee work schedules.

16. Defendants employed Plaintiffs to work as cleaners at the Station. In this role, Plaintiffs' primary duties included the removal of trash, as well as the cleaning and disinfecting of subway cars and the subway platform.

17. At all relevant times, Defendants employed approximately thirteen employees at the Station, all of whom were Hispanic except for Plaintiffs and one or two others who were also African American.

18. Defendants employed Cambridge and Paige from May 6, 2020 until September 21, 2020, Williams from May 26, 2020 until September 18, 2020, and Daniels from early-March 2020 until September 21, 2020.

19. Plaintiffs all worked without incident until late-July 2020.

20. In or around late-July 2020, Defendants assigned a supervisor named "Gladys," who is Hispanic and female, to serve as one of the immediate supervisors to the employees working in the Station.

21. As Plaintiffs' immediate supervisor, Gladys oversaw Plaintiffs' work on a day-to-day basis, and supervised and controlled Plaintiffs' work schedules and job duties under Defendant Panigua's supervision.

22. Almost immediately after Gladys began supervising Plaintiffs, Gladys began to treat Plaintiffs with unwarranted hostility by screaming at them and micro-managing their work. Lest there be any doubt that her conduct was racially motivated, Gladys made overly race-based disparaging remarks, either directly to Plaintiffs or while in their presence, such as "that's how black people clean," while treating all Hispanic employees with respect and affording them autonomy in performing their duties. In late-August 2020, while speaking to an unknown Hispanic male individual in Plaintiffs' presence, Gladys stated, about Plaintiffs, "I'm going to get these niggers out of here."

23. In response, Plaintiffs Cambridge, Paige, and Williams immediately reported the racially discriminatory behavior to Panigua, who defended Gladys's comment by replying, "Oh she didn't say that. She didn't mean it that way."

24. Meanwhile, also beginning in late-July 2020, Gladys began repeatedly sexually harassing Plaintiff Daniels. That is, Gladys followed Daniels on his lunch breaks, asked him questions about his personal relationship status, asked Daniels out on dates. Things turned physical in early-August 2020, as Gladys began touching Daniels's arms and shoulders while making comments such as, "Are you okay papi?" Daniels always rebuffed Gladys's advances by asking her to stop and explaining that he was involved in a relationship with another woman.

25. In or around late-August 2020, Daniels reported the incidents of sexual harassment to Defendant Panigua and stated that he intended to file a complaint with the EEOC if Defendants did not take action to stop it. In response, Panigua asked Daniels not to do so and stated that Defendants would investigate Daniels's complaint.

26. Immediately following Plaintiffs' respective complaints, Defendants began retaliating against Plaintiffs. Specifically, Gladys began increasing the frequency with which she micromanaged and yelled at Cambridge, Paige, and Williams. With respect to Daniels, Gladys began falsely alleging that he returned late from breaks and started sending him home in the middle of his work shifts without cause. Gladys and Defendant Panigua also denied Daniels's requests for extra work shifts, and when extra shifts were available, they only offered them to those employees who had not made any complaints about discriminatory conduct. This caused Daniels, an hourly employee, to lose pay from not working these extra shifts.

27. Only weeks later, on September 18, 2020, Defendants terminated Williams's employment after falsely accusing him of consuming alcohol on the subway platform while on duty, when he had done no such thing.

28. Three days later, on September 21, 2020, Defendants fired Daniels after also falsely accusing him of consuming alcohol on the subway platform while on duty, when he too had done no such thing.

29. That same day, Panigua fired Cambridge by text message, as she was not working that day, stating that a patron saw her drinking on the subway platform during her last shift, which was simply false.

30. Still that same day, Defendants terminated Paige after he left work an hour early due to a family emergency on the stated basis that he had abandoned his job. However, two months later, in November 2020, when Paige applied for New York State Unemployment Insurance Benefits, HCHI contested the claim and stated that it had fired Paige because a patron had caught him drinking alcohol on the subway platform during his shift, which was false.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS HCHI AND PANIGUA**
*Race Discrimination in Violation 42 U.S.C. § 1981*

31. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

32. Section 1981 prohibits employers from discriminating against employees on the basis of their race.

33. As described above, HCHI and Panigua were and are persons within the meaning of Section 1981, and Plaintiffs are also persons within the meaning of Section 1981.

34. As also described above, HCHI and Panigua discriminated against Plaintiffs, on the basis of their race, in violation of Section 1981, by denying them the opportunity to work in an employment setting free of unlawful discrimination.

35. As also described above, HCHI and Panigua discriminated against Plaintiffs, on the basis of their race, in violation of Section 1981, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial harassment against Plaintiffs by their supervisor, and by subjecting them to disparate working conditions.

36. As a direct and proximate result of HCHI's and Panigua's unlawful discriminatory conduct in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

37. HCHI's and Panigua's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiffs are entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Race Discrimination in Violation of the NYCHRL*

38. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

39. The NYCHRL prohibits employers from discriminating against employees on the basis of their race.

40. As described above, HCHI was and is an employer, Levine was and is an owner and the Chief Executive Officer of HCHI, and Panigua was and is an executive supervisor for

HCHI who participated in the discriminatory and retaliatory acts, subjecting them all to individual liability under the NYCHRL, while Plaintiffs were employees within the meaning of the NYCHRL.

41. As also described above, Defendants discriminated against Plaintiffs, on the basis of their race, in violation of the NYCHRL, by denying them the opportunity to work in an employment setting free of unlawful discrimination.

42. As also described above, Defendants discriminated against Plaintiffs, on the basis of their race, in violation of the NYCHRL, by treating them less well than other employees based on their race by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to take immediate and appropriate corrective action or exercising reasonable diligence to prevent a hostile work environment, and by subjecting them to disparate working conditions.

43. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

44. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiffs are entitled to an award of punitive damages.

### THIRD CLAIM FOR RELIEF BY DANIELS AGAINST DEFENDANTS
*Gender Discrimination in Violation of the NYCHRL*

45. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. The NYCHRL prohibits employers from discriminating against employees on the basis of their gender.

47. As described above, HCHI was and is an employer, Levine was and is an owner and the Chief Executive Officer of HCHI, and Panigua was and is an executive supervisor for HCHI who participated in the discriminatory and retaliatory acts, subjecting them all to individual liability under the NYCHRL, while Daniels was an employee within the meaning of the NYCHRL.

48. As also described above, Defendants discriminated against Daniels, on the basis of his gender, in violation of the NYCHRL, by subjecting Daniels to a hostile work environment of sexual harassment and by denying him the opportunity to work in an employment setting free of unlawful discrimination.

49. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Daniels has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

50. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Daniels is entitled to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF BY CAMBRIDGE, PAIGE, AND WILLIAMS
AGAINST DEFENDANTS HCHI AND PANIGUA**
*Retaliation in Violation of 42 U.S.C. § 1981*

51. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52. Section 1981 prohibits employers from retaliating against employees for lodging good faith opposition to discrimination occurring in the workplace.

53. As described above, HCHI and Panigua are persons within the meaning of Section 1981, while Cambridge, Paige, and Williams are also persons within the meaning of Section 1981.

54. As also described above, after Cambridge, Paige, and Williams engaged in activity protected by Section 1981, HCHI and Panigua retaliated against them.

55. As a direct and proximate result of HCHI's and Panigua's unlawful retaliatory conduct in violation of Section 1981, Cambridge, Paige, and Williams have suffered, and continue to suffer, economic loss, including, but not limited to, loss of past and future income, for which they are entitled to an award of monetary damages and other relief.

56. As a direct and proximate result of HCHI's and Panigua's unlawful retaliatory conduct in violation of Section 1981, Cambridge, Paige, and Williams have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

57. HCHI's and Panigua's unlawful retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Cambridge, Paige, and Williams are entitled to an award of punitive damages.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Retaliation in Violation of the NYCHRL*

58. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. The NYCHRL prohibits employers from retaliating against employees for lodging good faith opposition to discrimination occurring in the workplace.

60. As described above, HCHI was and is an employer, Levine was and is an owner and the Chief Executive Officer of HCHI, and Panigua was and is an executive supervisor for

11

HCHI who participated in the discriminatory and retaliatory acts, subjecting them all to individual liability under the NYCHRL, while Plaintiffs were employees who engaged in activity protected under the NYCHRL.

61. As also described above, after Plaintiffs engaged in activity protected by the NYCHRL, Defendants retaliated against them.

62. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, economic loss, including, but not limited to, loss of past and future income, for which they are entitled to an award of monetary damages and other relief.

63. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

64. Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiffs are entitled to an award of punitive damages.

## DEMAND FOR A JURY TRIAL

65. Pursuant to FRCP 38(b), Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York City laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiffs for participation in any form of this litigation;

d. Granting Plaintiffs all economic damages that they have sustained as a result of Defendants' discriminatory and retaliatory conduct, including general and special damages for past and future lost compensation and benefits that they would have received but for Defendants' conduct, including but not limited to back pay and front pay, whether legal or equitable in nature;

e. Granting an award of damages to be determined at trial to compensate Plaintiffs for emotional distress and/or mental anguish in connection with their claims;

f. Granting an award of damages to be determined at trial to compensate Plaintiffs for the harm caused to their professional and personal reputations in connection with their claims;

g. Awarding Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and any other costs and expenses;

h. Granting an award of punitive damages, to the extent permitted by law, commensurate with Defendants' ability to pay;

i. Pre-judgment and post-judgment interest, as provided by law; and

  j. Granting Plaintiffs other and further relief as this Court finds necessary and proper.

Dated: Garden City, New York
   April 12, 2022

            Respectfully submitted,

            BORRELLI & ASSOCIATES, P.L.L.C.
            *Attorneys for Plaintiffs*
            910 Franklin Avenue, Suite 200
            Garden City, New York 11530
            Tel. (516) 248-5550
            Fax. (516) 248-6027

    By: _/s/ Andrew C. Weiss_____
            ANDREW C. WEISS, ESQ. (5560537)
            ALEXANDER T. COLEMAN, ESQ. (AC 8151)
            MICHAEL J. BORRELLI, ESQ. (MB 8533)